IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JONATHAN ANIBAL CLAUDIO                                                    PLAINTIFF

v.                          Civil No. 5:23-cv-05158-TLB-CDC

CORPORAL TANNER GUTHRIE, Benton
County Sheriff's Office/Detention Center                                   DEFENDANT


### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Jonathan A. Claudio ("Claudio"), filed this civil rights action under 42 U.S.C. § 1983. Claudio contends his constitutional rights were violated when he was arrested in South Carolina and extradited to Arkansas based on a warrant obtained by Defendant Guthrie. In his Complaint, Claudio alleges his constitutional rights were violated because of an arbitrary arrest, false imprisonment, racial profiling, malicious prosecution, false arrest, illegal extradition, illegal search and seizure, and defamation, libel and slander. (ECF No. 1 at 5). Claudio was acting *pro se* at the time he filed his Complaint but was subsequently appointed an attorney.[1] In his summary judgment response, Claudio has abandoned all claims except for the malicious prosecution claim and his claim that his arrest was unsupported by probable cause because there were material falsehoods or omissions contained in the affidavit for the arrest warrant.

Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), United States District Judge Timothy L. Brooks referred this case to the undersigned for the purpose of making a Report and Recommendation. The case is before the Court on a Motion for Summary Judgment filed by

---

[1] The Court would like to express its appreciation to Mr. Alex Mickel and Ms. Colette Brashears for undertaking representation of Claudio on a *pro bono* basis.

1

Defendant Guthrie. (ECF Nos. 62-64). Claudio filed a response (ECF Nos. 70-72), and Defendant replied. (ECF Nos. 75-76).

## I.  BACKGROUND

The facts in this case are largely undisputed. On October 30, 2022, at 20:36 (8:36 pm) Defendant Guthrie was in pursuit of a fleeing vehicle which he knew to be stolen out of Mayes County, Oklahoma. (ECF No. 72 at 1); (ECF No. 64-2 at 1). The pursued vehicle traveled at speeds more than 100 miles per hour until it collided with another vehicle and was propelled into a field due to the momentum from the accident. (ECF No. 72 at 1).

Defendant Guthrie observed a Hispanic male with a shaved head, facial hair, blue work shirt, and dark blue pants exit the vehicle. (ECF No. 72 at 2). The suspect looked at Defendant Guthrie and began to flee on foot. *Id.*

Defendant Guthrie deployed a patrol canine and engaged in foot pursuit. (ECF No. 72 at 2). During the foot pursuit, Defendant Guthrie fell, resulting in extensive cuts to both his hands. *Id.* Defendant Guthrie attempted to continue the pursuit, but there was a large amount of blood running down his hands, rendering them ineffectual. *Id.* Returning to the stolen vehicle, Defendant Guthrie observed a passenger, later identified as Summer Wolfe ("Wolfe"), being placed into custody by other officers who had arrived at the scene. (ECF No. 72 at 2). Deputy Steven Scott read Wolfe her Miranda Warning, and she waived her right to counsel. *Id.* Deputy Scott then asked Wolfe to identify the driver, to which she replied, "that's my fiancé and I'm not giving up shit." *Id.*

One of the officers on the scene reported to Guthrie that they located Wolfe's Facebook page and may know the identity of her fiancé from her Facebook page, a man named Claudio.

(ECF No. 72 at 2). The man on Wolfe's Facebook page was identified as Jonathan Claudio. *Id.* Claudio and Wolfe are in each other's Facebook pictures, and have "loved" each other's pictures. *Id.*

Deandra Bartley is the wife a police officer and was with her husband when he received the call; Bartley showed Claudio's Facebook page to Defendant Guthrie. (ECF No. 72 at 3). Defendant Guthrie positively identified Claudio as the driver of the stolen vehicle who fled. (ECF No. 64 at 2). Claudio disputes the "positive" identification, saying he was incarcerated in South Carolina at the time of the incident. (ECF No. 72 at 3).

Defendant Guthrie asked CENCOM to contact Mayes County to determine if they had any information on the male. (ECF No. 72 at 3). Defendant Guthrie used the information provided by Mayes County to run the suspect's name through NCIC/ACIC and was provided with a photo of Claudio, who had an active warrant for his arrest out of the Siloam Springs Police Department. *Id.* Claudio disputes that the warrant could be considered "active" as it was issued on November 13, 2005, on the unrelated the charges of driving while intoxicated, driving on a suspended-revoked license, and two charges of failure to appear. *Id.* at 3-4.

Defendant Guthrie identified the suspect as Jonathan Claudio and presented an affidavit of probable cause, requesting Benton County Circuit Judge Christine Howart issue an arrest warrant for Claudio. (ECF No. 72 at 3). Claudio was advised of the warrant and the charges against him and consented to the extradition and signed a waiver of extradition in the presence of two witnesses and the Municipal Court Judge. *Id.* at 4. Claudio attests to the fact that he voluntarily consented to the transfer to Arkansas to face the charges against him. *Id.*

Claudio was extradited from Horry County, South Carolina on the warrant issued by Judge

3

Howart, and booked into the Benton County Detention Center ("BCDC") on July 7, 2023. (ECF No. 72 at 4). Claudio remained incarcerated until August 14, 2023. (ECF No. 64-3 at 3). The charges of fleeing by vehicle with extreme indifference, fleeing on foot, theft by receiving, criminal mischief in the second degree, and leaving the scene of a property damage accident, were dismissed on September 26, 2023, because Claudio had established that he was incarcerated in South Carolina on the date of the alleged offenses. (ECF No. 70-1 at 1-3). There is currently an arrest warrant issued for Claudio out of Siloam Springs for an unrelated matter. (ECF No. 72 at 4).

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is

4

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.   DISCUSSION

Defendant Guthrie seeks summary judgment on each of Claudio's claims. Defendant Guthrie first contends nothing in the record suggests he acted with malice as is required to establish a claim of malicious prosecution. Second, Defendant Guthrie argues the affidavit clearly established probable cause for Claudio's arrest and in this regard, Guthrie asserts there were no false statements or material omissions in the affidavit. Defendant Guthrie next contends he is entitled to qualified immunity. Finally, Guthrie argues there is no basis for official capacity liability.[2]

#### A.   Fourth Amendment Malicious Prosecution Claim

To establish a Fourth Amendment malicious prosecution claim, Claudio must show that "(1) the criminal proceeding was instituted without probable cause, (2) the defendant's motive in instituting the proceeding was malicious, and (3) the prosecution terminated in acquittal or discharge of the accused." *Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022) (citing *Thompson v. Clark,* 596 U.S. 36, 44 (2022)). "[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause." *Thompson,* 596 U.S. at 43.

---

[2] Defendant Guthrie made numerous other arguments in his Motion for Summary Judgment. However, these were made before it became apparent that Claudio was abandoning all claims except for his malicious prosecution and *Franks* related claim.  In his initial brief, Defendant Guthrie also inadvertently relied on older caselaw with respect to the malicious prosecution claim that had since been overruled by the Supreme Court.

Elements one and two of the malicious prosecution claim are at issue in this case. Element three has been established as it is undisputed that the charges were dismissed because Claudio was incarcerated at the time of the October 30, 2022, incident.

"[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The Eighth Circuit has stated that probable cause exists when "the totality of the circumstances at the time of the arrest '[is] sufficient to lead a reasonable officer to believe that the defendant has committed or is committing an offense.'" *Borgman v, Kedley*, 646 F.3d 518, 523 (8th Cir. 2011) (quoting *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010).

"We must give law enforcement officers 'substantial latitude in interpreting and drawing inferences from factual circumstances,' ... but such latitude is not without limits." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (quoting *United States v. Washington*, 109 F.3d 459, 465 (8th Cir. 1997)). First, evidence tending to "negate the possibility that a suspect committed a crime is relevant" to whether probable cause exists. *Id.* "In this sense, the Fourth Amendment requires that we analyze the weight of all the evidence – not merely the sufficiency of the incriminating evidence." *Id.* Second, "law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as law enforcement would not be unduly hampered if the agents wait to obtain more facts before seeking arrest." *Id.* (internal punctuation marks and citations omitted).

Recognizing that probable cause is not a high bar, Claudio asks the Court to consider the

following:

    (1) As documented by his BCDC booking information, he is "White" not "Hispanic or Latino;"

    (2) Several factors undermine Defendant Guthrie's eyewitness account of the driver of the vehicle including:

        (a) The bodycam footage documents that the events took place in near-total darkness at approximately 8:40 pm (at night) in an unlit field.

        (b) Guthrie's vehicle was parked approximately thirty feet behind the stopped vehicle, suggesting this was the distance from which Defendant Guthrie observed the driver.

        (c) The brief opportunity to view the driver occurred during a period of high stress immediately after a high-speed chase that topped speeds of 100 miles per hour and ended in a foot chase.

        (d) Defendant Guthrie was badly injured during the foot chase with injuries to his hands as well as his groin. Soon thereafter, Defendant Guthrie observed the photo and believed Claudio to be the escaped driver.

Claudio maintains that these factors defeat "probable cause because there was not a 'fair probability' or 'substantial chance' that Defendant Guthrie could correctly identify the driver relying on his own memory alone." (ECF No. 71 at 6) (quoting *Illinois v. Gates,* 462 U.S. 213, 243 n.13, 246 (1983)).

    Claudio first argues he is White and not Hispanic. In support, he refers the Court to the booking information from the BCDC. The record in question does indicate his race as White and

7

ethnicity as not Hispanic or Latino. (ECF No. 64-3 at 1). Records from South Carolina reflect the same information. (ECF No. 70-1 at 2). Defendant Guthrie's production, however, includes a page of Claudio's medical records that indicates his race as Hispanic. (ECF No. 75-1 at 1). Claudio has not filed his own affidavit to support his identification as White or Hispanic. At best, the summary judgment record is inconclusive. The record is insufficient for the Court to find as false Defendant Guthrie's identification of Claudio as Hispanic.

The bodycam video does illustrate there was little illumination where the incident occurred. (ECF No. 66 (flash drive conventionally filed)). Despite this, Defendant Guthrie was able to describe the male driver as a Hispanic male, with a shaved head and facial hair, wearing a work shirt like the type janitors wear, and blue pants. When one considers this information, along with Wolfe's identification of the male driver as her fiancé; the pictures of Wolfe and Claudio on Facebook; the connection between Claudio and Mayes County where the vehicle was stolen; the NCIC/ACIC report indicating Claudio had an outstanding warrant in Siloam Springs, Arkansas; and Defendant Guthrie's identification of Claudio as the male suspect both from the Facebook pictures and the NCIC/ACIC's photo, the Court believes there existed a fair probability to believe Claudio was the individual who fled the scene. *See e.g., Dunn v. Does 1-22,* 116 F.4th 737, 747-48 (8th Cir. 2024) ("Probable cause is not a high bar; It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act. But it is a bar." (internal quotation marks, alterations, and citations omitted). Subsequent information, of course, definitively established that it could not have been Claudio, but hindsight cannot be employed to inform the Court's decision as to whether probable cause existed at the time Defendant Guthrie identified Claudio as the suspect.

Even if, for the sake of argument, the Court found probable cause lacking, there is no evidence from which a reasonable trier of fact could conclude that Defendant Guthrie acted maliciously. In *Brown v. Am. Fed'n of State, Cty. and Mun. Emp's, Council No. 5,* 41 F.4th 963 (8th Cir.), *cert. denied*, ___ U.S. ___, 143 S. Ct. 491 (2022), the Court of Appeals for the Eighth Circuit considered a federal claim for malicious prosecution and concluded there must be a showing of "malice" – that is, an improper purpose for bringing the action. *Id.* at 968. The summary judgment record is bare of any facts sufficient to establish an inference that Defendant Guthrie acted with malice.

While some courts have concluded the absence of probable cause is itself sufficient to create an inference of malice, this Court disagrees. *See e.g., Dunn v. Doe 1-22,* 670 F. Supp. 3d 735, 853 (S.D. Iowa 2023), *aff'd in part, reversed in part, on other grounds* 116 F.4th 737, 752 (8th Cir. 2024) (declining to address the appropriate standard for malice); *Harris v. Hixon,* 102 F.4th 1120, 1133 (11th Cir. 2024) (Fourth Amendment malicious prosecution claim "simplified" to only two elements—violation of the Fourth Amendment and the favorable termination of the criminal proceedings). Construing a malicious prosecution claim in such a way conflates two separate elements of the offense as recognized by the Supreme Court in *Thompson*. The Supreme Court noted that American courts had described malicious as being without probable cause *and* for a purpose other than bringing the defendant to justice. *Thompson,* 596 U.S. at 44. Thus, while a lack of probable cause may inform the malice inquiry, it cannot determine it – there must be some evidence of improper motive. Here, there is no evidence from which an inference of malice on Defendant Guthrie's part can be made.

Alternatively, Defendant Guthrie maintains he is entitled to qualified immunity on this

claim. "Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Id.* "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341-43 (1986)).

In evaluating whether qualified immunity applies, the Court asks two questions: (1) whether the facts shown by the plaintiff make out a violation of a constitutional right; and (2) whether the right was clearly established at the time of the defendant's alleged misconduct. The questions may be answered in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court has already concluded that no constitutional violation exists on this claim. Defendant Guthrie is therefore entitled to qualified immunity in this case. The Court further notes that prior to the *Thompson* decision of April 4, 2022, the Court of Appeals for the Eighth Circuit had found no constitutional claim existed for a malicious prosecution claim.

Finally, Defendant Guthrie maintains there is no basis for official capacity liability on this claim. The official capacity claim is one against Benton County. *Elder-Keep v. Aksamit,* 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity s actually a suit against the entity for which the official is an agent."). To prevail on a claim against Benton County, Claudio must show that the constitutional violation resulted from (1) an official "policy,"

(2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Indep.,* 829 F.3d 695, 699 (8th Cir. 2016). In his Response, Claudio abandoned his official capacity claim. (ECF Nos. 70-72).

For the reasons outlined, Defendant Guthrie is entitled to judgment in his favor on Claudio's malicious prosecution claim.

### B. Fourth Amendment Warrant Affidavit Claim

Claudio maintains that Defendant Guthrie's "affidavit of probable cause contained numerous false statements and omissions that show an utter lack of probable cause to institute these charges against [him]." (ECF No. 71 at 10). In this regard, Claudio asks the Court to consider the following: (1) the affidavit fails to mention that Defendant Guthrie used the pictures from Wolfe's Facebook profile page that were posted several months before the incident to first identify Claudio's name and picture or mention that Wolfe's relationship status could not be untangled; (2) the affidavit does not contain a statement indicating Defendant Guthrie actually reviewed the NCIC/ACIC report; (3) Defendant Guthrie failed to mention that the Siloam Springs arrest warrant was issued years before for unrelated crimes; and (4) the NCIC/ACIC report allegedly generated on October 20, 2022, does not appear in the discovery materials and in fact, Claudio believes the report would have likely shown he was incarcerated in South Carolina at the time. *Id.* at 10-11. According to Claudio, "[t]he false statements and omissions contained in the affidavit are material, numerous, and clearly critical to a finding of probable cause." *Id.* at 11.

In *Franks v. Delaware,* 438 U.S. 154, 171 (1978), "the Supreme Court defined a limited exception to the presumptive validity of an affidavit supporting a search warrant application." *United States v. Ozar,* 50 F.3d 1440, 1443 (8th Cir. 1995). The Eighth Circuit stated

11

that:

> Under *Franks v. Delaware,* if the government intentionally includes material false statements in its warrant affidavits, or includes material false statements with reckless disregard for the truth that is the legal equivalent of intentional falsehood, a suppression court must set aside those statements and then review the remaining portions of the affidavits to see if what remains is sufficient to establish probable cause. Defendants bear the burden of proving the intentional or reckless inclusion of false statements in a warrant affidavit.

*Id.* (internal quotation marks and citation omitted). This same analysis applies to a § 1983 claim alleging a probable cause affidavit for an arrest warrant included false information or omitted truthful information. *Howe v. Gilpin,* 65 F.4th 975 (8th Cir. 2023); *see also Estate of Nash v. Folsom,* 92 F.4th 746, 754 (8th Cir. 2024) (noting *Franks* had been extended to cover recklessly omitted information). On this issue, the Eighth Circuit has stated that:

> Including a false statement in a warrant affidavit is a *Franks* violation when the defendant establishes by a preponderance of the evidence that (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, includes a false statement in a warrant affidavit, and (2) the false statement was necessary to the finding of probable cause.
> Omitting information violates *Franks* when 1) . . . facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and 2) . . . the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.

*Estate of Nash,* 92 F.4th at 754 (internal quotation marks and citations omitted). Innocent mistakes or negligence do "not suffice to demonstrate reckless or deliberate falsehood." *United States v. Mashek,* 606 F.3d 922, 928 (8th Cir. 2010). "In a § 1983 case, the issues are whether 'the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable,' and, if deliberate falsehood is alleged, whether the affidavit is truthful, which 'means that the information put forth is believed or appropriately accepted by the affiant as true. Omissions and falsehoods that are immaterial or not supported by

12

the record do not suffice.'" *Howe,* 65 F.4th at 980 (quoting *Morris v. Lanpher,* 563 F.3d 399, 402 (8th Cir. 2009)) (cleaned up).

"In a warrant affidavit, the government need only show facts sufficient to support a finding of probable cause." *Ozar,* 50 F.3d at 1445 (quotation omitted). As discussed above, "[p]robable cause exists if the totality of the facts based on reasonably trustworthy information would justify a prudent person in believing an individual arrested had committed an offense." *Williams v. City of Alexander,* 772 F.3d 1307, 1310 (8th Cir. 2014) (cleaned up).

Although Claudio suggests the affidavit contains false statements and material omissions, the alleged erroneous information is more appropriately considered to be omissions rather than false statements, *i.e.,* Defendant Guthrie failed to mention he used the pictures from Wolfe's Facebook profile page that were posted several months before the incident to first identify Claudio's name and picture or mention that Wolfe's relationship status could not be untangled;[3] Defendant Guthrie failed to mention whether he reviewed the NCIC/ACIC report; Defendant Guthrie failed to indicate the Siloam Springs arrest warrant was issued years before and for completely unrelated crimes; and finally, Claudio's supposition that the October 30, 2022, NCIC/ACIC report likely would have shown he was incarcerated on October 30, 2022, thereby establishing he could not be the suspect.

After describing the high-speed chase and accident, the affidavit of probable cause continues as follows:

> Upon first approach, I did not observe anyone attempting to exit the vehicle. When I pulled my patrol unit behind the truck to a position of cover, I observed a Hispanic

---

[3] The profile pictures were pulled up by the wife, Deandra Bartley, of one of the officers on the scene. Deandra Bartley indicated there were also pictures of another person, who could not be definitely identified as a female or male, who Wolfe was apparently married to.

> male with a shaved head, facial hair, wearing a blue work shirt and dark blue pants exit the vehicle. He looked at me and began to flee on foot. I noticed that Officer Preston Caniglia (810) yell from behind me "STOP POLICE K-9" but the male continued fleeing. I deployed my dual-purpose patrol canine and began to engage in the foot pursuant. While doing so, I was injured when I fell and caused extensive cuts to both of my hands and forced the vehicle bailout button for my canine into my groin, causing me a great deal of pain. I regained my footing and attempted to continue with the foot pursuit but was unable to due to the large amount blood that was beginning to run down my hands, rendering them unusable. I returned to the truck and observed that Officer Caniglia was holding the passenger at gun point. Trooper Britni Binam (L 21) arrived on-scene and assisted Officer Caniglia with placing her into custody. I then placed my canine back in the vehicle.
>
> * * *
>
> Deputy Steven Scott (BC121) arrived and read the passenger, Summer Wolfe . . . her Miranda Warning afforded to her by law and waived her right to counsel. When Deputy Scott asked Wolfe who the driver was, she stated "that's my fiancé and I'm not giving up shit." I was able to locate a possible name for the driver via Wolfe's Facebook profile. I then had CENCOM contact Mayes County and see if they had any information on the male, Jonathan Claudio. They provided me with a date of birth . .. for him and upon running him through NCIC/ACIC, I was provided with a picture. I positively identified the male that had fled from me, and the driver of the stolen vehicle, as Jonathan Claudio . . .. Claudio also has an active warrant for his arrest out of the Siloam Springs Police Department.
>
> * * *

(ECF No. 64-3 at 9-10).

Defendant Guthrie's failure to include that he viewed the pictures on Wolfe's Facebook profile and identified Claudio as the driver from them did not render the affidavit misleading nor does its addition negate the existence of probable cause. Defendant Guthrie' affidavit included the statement that he was able to obtain a possible name for the driver via Wolfe's Facebook profile. "Recklessness . . . may be inferred from the fact of omission of information from an affidavit when the material omitted would have been *clearly critical* to the finding of probable cause." United States v. Marshek, 606 F.3d 922, 928 (8th Cir. 2010) (emphasis added) (internal quotation marks and citation omitted). The omitted Facebook information was not clearly critical

to the finding of probable cause.

Next, Claudio points out that Defendant Guthrie's affidavit does not state he in fact reviewed the NCIC/ACIC report. While it is true Defendant Guthrie does not specifically state he reviewed the report, he does indicate he obtained a picture of Claudio from the NCIC/ACIC report and from it, positively identified Claudio as the driver. Claudio's remaining argument here is mere supposition. There in nothing in the summary judgment record to suggest that the NCIC/ACIC report revealed that Claudio was incarcerated or that Defendant Guthrie proceeded to submit his affidavit despite knowledge that Claudio was incarcerated on the date in question.

Next, the age of the Siloam Springs warrant does nothing to establish that it was improperly reported as an active warrant. Nor does Defendant Guthrie make any representation with respect to the warrant that is inaccurate. Defendant Guthrie merely states the existence of a warrant for Claudio's arrest. There is simply nothing misleading about the statement.

"When an issuing magistrate relies solely on a supporting affidavit in determining probable cause, . . . 'only that information which is found within the four corners of the affidavit may be considered in determining probable cause.'" *United States v. Saddler,* 19 F.4th 1035, 1039 (8th Cir. 2021) (quoting *United States v. Roberts,* 875 F.3d 709, 713 (8th Cir. 2020)). We give great deference to the issuing magistrate judge's decision regarding the existence of probable cause in an affidavit." *United States v. Reed,* 25 F.4th 567, 569 (8th Cir. 2022) (citations omitted). "[W]e examine the sufficiency of a . . . warrant affidavit using a 'common sense' and not a 'hypertechnical' approach." *United States v. Grant,* 490 F.3d 627, 632 (8th Cir. 2007) (internal quotation marks and citations omitted).

While it has now been proven that Defendant Guthrie's identification of the suspect was in

error, and this error resulted in Claudio being extradited from South Carolina and temporarily incarcerated in Benton County, this unfortunate sequence of events does not belie the existence of probable cause in the warrant affidavit. Although the Court is sympathetic to the consequences resulting from issuance of the arrest warrant, Defendant Guthrie's affidavit was sufficient to support a finding that probable cause existed for the issuance of a warrant for Claudio's arrest.

Since the Court has found no constitutional violation exists, Defendant Guthrie is entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts having make out a violation of a constitutional right the Defendant is entitled to qualified immunity). Moreover, Benton County may not be held liable. *See e.g., Ivey v. Audrain Cty., Mo.*, 968 F.3d 845, 851 (8th Cir. 2020) (if the individual officers are entitled to qualified immunity under the first prong of the analysis, *i.e.*, no evidence of a constitutional violation, then the county cannot be held liable); *Schoelch v. Mitchell*, 625 F.3d 1041, 1048 (8th Cir. 2010) (holding that there was no need to consider a pretrial detainee's failure to protect claim against the city when there was no evidence that any of the individual officers committed a constitutional violation). Defendant Guthrie is entitled to summary judgment on this claim.

## IV.  CONCLUSION

For the reasons stated, it is recommended that the Defendant's Motion for Summary Judgment (ECF No. 62) be **GRANTED,** and the case be **DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties**

are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.

Status of Referral: The referral terminates upon the filing of this Report and Recommendation.

**RECOMMENDED** this 7th day of July 2025.

*Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE